## IN BANCO.

---

### ROBERT BOYD *vs.* MANUEL PICO.

A lease for one year, with a *preference* to the lessee, in case he should desire at the end of that time to take the premises for a further term, does not import a lease from year to year.

The decision of the court was delivered by JUDGE ROBERTSON.

This case was submitted to the decision of the court, without the intervention of a jury, upon the facts as agreed to by counsel.

It appears that on the 5th day of September, 1848, plaintiff hired to the defendant a certain house in Honolulu. The following is a memorandum of the agreement, signed by the plaintiff at that time.

"Oahu, Sandwich Islands.

"To all whom it may concern, know ye that I, Robert Boyd, have this day hired unto Manuel Pico a certain building situate in "Fid street," between the buildings of William Harbottle and Joseph Booth, in Honolulu, on the following conditions, viz: That the said Pico shall pay the annual rent of one hundred and sixty dollars in advance, commencing on the 18th instant.

"That said Pico shall keep the building in good order and repair during occupancy, and any alteration suggested shall be submitted to my approval, if otherwise to be at the entire risk of the party so altering. And that should said Pico be disposed after the expiration of said term, to continue, he shall have the preference.

"In witness whereof I have hereunto set my hand this 5th day of September, 1848. R. BOYD."

"Witness John G. Munn."

Defendant at the same time signed a similar document, on his part, signifying his agreement to the contract.

In accordance with their agreement Pico paid the rent for one year commencing the 18th of September, 1848, and took possession of the house. On the 23d of April, 1849, plaintiff mortgaged the premises to Charles H. Marshall, and before the expiration of the year, left the kingdom for California. His wife remained in Honolulu, residing in a house near the one hired to defendant.

About the time the year expired, Pico left the premises, and they were taken possession of by Joseph Silva, to whom the mortgage was assigned by Marshall. The mortgage passed by assignment through the hands of several parties, and was finally foreclosed. The premises were sold on the 12th May, 1853, and in making up the account no credit was allowed for rent from the 18th September, 1849. Plaintiff returned from California in 1855.

It is contended on behalf of the plaintiff that this was a lease from year to year; that as defendant never made a formal surrender of his lease, he must be held responsible for the rent; and that Joseph Sylva went into possession of the premises as assignee of the defendant.

On the part of the defendant it is argued that this was a lease for one year, with a preference, if he wished to hire the house for a fresh term after the year expired; that it was not in defendant's power to make a formal surrender of the lease, because Boyd was not within the kingdom when the year expired; and that Sylva went into possession as assignee of the mortgage.

It seems to us that our decision in this case must depend entirely upon the proper construction of the written agreement recited above. The question is, what was the intention of the parties, as manifested by the tenor of the two memorandums of agreement? Did the contract amount to a lease from year to year, or was it a lease for one year only. We are clearly of opinion that these writings import nothing more than a lease for one year with a preference, or the refusal as it is sometimes called, to the defendant, in case he should desire, at the expiration of that time, to take a fresh lease for a further term.

There is a wide distinction between the meaning of the word *preference*, which is used in this agreement, and the word *privilege*, which is sometimes used in such cases. This distinction is so great as to vary the character of the contract entirely. In this instance, had the latter word been used instead of the former, it would have imported a lease from year to year, at the option of the lessee. We will illustrate our meaning more fully by supposing a case, by way of example. Suppose, for instance, that Boyd had remained in the kingdom, and been still living here up to the expiration of the year for which the rent was paid by Pico; that towards the close of that term, some third party had offered Boyd a rent of $200 for the house for the succeeding year. Would the contract between Boyd and the defendant have prevented the former from receiving and considering the new offer? Most certainly not. It would only have been incumbent upon Boyd, under those circumstances, to have said to Pico, "I have been offered $200 for my house during the next year, but I am bound by our agreement to give you the *preference*. If you desire to keep the house for another year, you may have it at the rent I am offered by another party, but if you will not pay at that rate, I shall let the other party have it." In that case, could the defendant have claimed to retain

the possession of the house, at a rent of $160 only, under the agreement of the 5th September? We think not. We do not find anything in that agreement which would have sustained him in so doing.

This agreement cannot be construed to mean a lease from year to year, because the time of the duration of the term is plainly limited to one year, by the terms of the writings. Those terms are such as to indicate clearly to our minds, that the intention of the contracting parties was that a new arrangement should be made, at the expiration of the year, if Pico should then express a desire to avail himself of his *preference*, and if not, that his tenancy was then at an end.

Such being our construction of the contract, we do not see the force of the argument as to the defendant not having made a formal surrender of his lease, because at the expiration of the year his tenancy was at an end, and he had nothing to surrender. If the plaintiff left the country without placing his property in the hands of some intelligent agent, that was no fault of the defendant's.

The question whether or not the defendant is liable in this action, does not depend in any degree upon the fact that when the premises were sold under a decree in chancery, no allowance was made to the plaintiff as mortgagor, for rent from the 18th September, 1849. Whatever others may have done in contravention of the plaintiff's rights, we feel satisfied that he has no claim upon the defendant.

Let judgment be entered for the defendant, with costs.

Mr. Montgomery for plaintiff.

Mr. Bates for defendant.